UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PETITION OF ROBERT CHATERLAIN,
ET AL.                                           CIVIL ACTION

VERSUS                                           NUMBER 08-400-RET-SCR

RICHARD LLOYD, ET AL.

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, September 29, 2009.

                                  STEPHEN C. RIEDLINGER
                                  UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PETITION OF ROBERT CHATERLAIN,
ET AL.                                           CIVIL ACTION

VERSUS                                           NUMBER 08-400-RET-SCR

RICHARD LLOYD, ET AL.

**MAGISTRATE JUDGE'S REPORT**

Before the court is a Motion for Summary Judgment on Behalf of Employer Trustees of the Sheet Metal Workers' International Association, Local Union No. 21, Welfare Trust Fund filed by plaintiffs Robert Chaterlain, Michael Vaughn and Brandon Brown as the Employer Trustees for the fund. Record document number 9. This motion is opposed.[1] Also before the court is a Motion for Summary Judgment filed by defendants Richard Loyd, Paul Howard, Sr. and Paul Howard, Jr., as Employee Trustees for the fund. Record document number 10.

This action arose from a dispute involving proposed changes to the Sheet Metal Workers International Association, Local Union No. 21, Welfare Trust Fund (hereafter, the Fund). The Baton Rouge Roofing and Sheet Metal Contractors Association, Inc., the Sheet Metal Workers' International Association, Local Union No. 21, and certain individual trustees entered into an agreement to create the Fund for the purpose of providing health and welfare benefits to

---

[1] Record document number 13.

eligible employees (hereafter, the Trust Agreement). The Fund is administered by a six-member Board of Trustees, composed of three employer trustees (hereafter, Employers) and three employee trustees (hereafter, Employees). The health benefits are defined and described in the Medical and Dental Benefit Plan for the Baton Rouge Sheet Metal Workers Health and Welfare Fund (hereafter, the Plan).[2]

At a meeting held on January 15, 2008, the Employers submitted several resolutions proposing certain changes in the Plan benefits to eligible participants. These changes included the following: (1) increasing the annual deductible; (2) increasing the co-pay on doctor visits; (3) increasing the co-pay on prescription drugs; (4) imposing an annual deductible on prescription drugs; (5) increasing the monthly COBRA premium; (6) increasing the monthly self-pay premium to the effective COBRA rate; (7) making disabled retirees ineligible to participate in the Plan after COBRA coverage expires; (8) increasing the monthly premium for all non-Medicare eligible retirees; and (9) making retirees ineligible to participate in the plan after they become eligible for Medicare or increasing Medicare-eligible retiree's monthly premium.[3]

The trustees were unable to reach a majority vote on the proposed changes. The Employers subsequently moved for the

---

[2] Record document number 9-5, exhibit IA.

[3] Record document number 9-4, exhibit IB.

deadlocked vote to be broken by a neutral umpire pursuant to Section 3.13 of the Trust Agreement. After the trustees were unable to agree on an impartial umpire, the Employers filed this action and requested that the Court appoint an impartial umpire.

The Employers argued that Section 3.13 of the Trust Agreement requires that an impartial umpire be appointed to break the deadlock.[4] Section 3.13 of the Trust Agreement provides as follows:

> Section 3.13 Manner of Acting in the Event of Deadlock
>
> (a) A deadlock shall be deemed to exist whenever a proposal, nomination, motion or resolution made or proposed by any one of the Trustees is not adopted or rejected by a majority vote and the maker of the proposal, nomination, motion or resolution notifies the remaining Trustees in writing that a deadlock exists.
>
> (b) In the event of such deadlock arising, the Trustees shall meet for the purpose of agreeing upon an impartial umpire to break such deadlock by deciding the dispute in question. In the event of the inability of the Trustees to agree upon the selection of such impartial umpire within a reasonable time, then, on the petition of either group of Trustees, the senior judge on duty of the District Court of the United States for the Middle District of Louisiana shall appoint such impartial umpire. Such impartial umpire shall immediately proceed to hear the dispute between the Trustees and decide such dispute, and the decision and award of such umpire shall be final and binding upon the parties. The reasonable compensation of such umpire and the costs and expenses (including, without limitation, attorneys' and reporter fees) incidental to any proceedings instituted to break

---

[4] Both the plaintiffs and the defendants sometimes use the term "arbitrator" in their memoranda when referring to the impartial umpire. Since the Trust Agreement does not authorize the appointment of an arbitrator, as such, the Court will use the term contained in the Trust Agreement - "impartial umpire."

3

a deadlock shall be paid by the Trust Fund.

(c) Any impartial umpire selected or designated to break a deadlock shall be required to enter his decision within a reasonable time fixed by the Trustees.  The scope of any such proceeding before such impartial umpire shall be limited to the provisions of this Trust Agreement and to the provisions of the rules, regulations and by-laws adopted by the Trustees and to the plan of benefits established by them.  The impartial umpire shall have no jurisdiction or authority to change or modify the provisions of this Trust Agreement or to decide any issue arising under or involving the interpretation of any collective bargaining agreements between the Union, the Association and other Employers, and such impartial umpire shall have no power or authority to change or modify any provisions of any such collective bargaining agreements.[5]

Employers asserted that the January 15 meeting ended in a deadlock, the proposed changes related to the administration of the Fund, and the trustees failed to agree on an impartial umpire. Employers noted that a reasonable length of time has passed from the time of the deadlocked meeting until this action was filed. Employers argued that under these circumstances, the court has the authority pursuant to § 3.13 of the Trust Agreement and 29 U.S.C. § 186(c)(5)(B) to appoint an impartial umpire to break the deadlock.

Employees' motion for summary judgment sought the dismissal of the Employers' complaint based on the same arguments set forth in their opposition to the Employers' motion.  Employees' argued that § 186(c)(5)(B) does not authorize the court to appoint an umpire

---

[5] Record document number 1-4, exhibit A, Restated Agreement and Declaration of Trust.

4

because the proposed changes do not involve the administration of the Fund. Employees asserted that since the Trust Agreement requires a unanimous vote of the trustees to change the Plan design, rather than a majority vote, such decisions are not administrative in nature. Thus, an impartial umpire cannot break the deadlock and the decisions should be left to the collective bargaining process.

## Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most

5

favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence or resolve factual disputes.  *Id.; International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  The issues presented in this case involve an employee benefit trust fund jointly administered by an equal number of employee and employer representatives and organized by agreement under the provisions of The Labor Management Relations Act, 29 U.S.C. §186(c)(5).  Pursuant to § 186(c)(5)(B), in the event the employer and employee groups deadlock over a decision regarding the administration of the fund, and no neutral person has been elected to break the deadlock, the two groups shall attempt to agree on an impartial umpire to decide the dispute.  If they are unable to agree on an impartial umpire within a reasonable time, either group may petition for an impartial umpire to be appointed by the federal district court for the district where the trust fund has its principal office.

Trustees of a pension fund created by a collective bargaining agreement have no power to resolve issues that are properly the subject of collective bargaining.  *Hauskins v. Stratton*, 721 F.2d

6

535, 537 (5th Cir. 1983), *citing*, *NLRB v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789 (1981).  This Court has previously recognized different approaches employed in determining whether an issue falls within the administration of the fund as opposed to being a matter for collective bargaining.  *Hodges v. Holzer*, 707 F.Supp. 232 (M.D.La. 1988).  Specifically, the Court identified the following circuit court interpretations:

> The Second Circuit has interpreted "administration" as encompassing those issues which are entrusted to the judgment of the trustees and management under the Trust Agreement. *Mahoney v. Fisher,* 277 F.2d 5 (2d Cir. 1960). In addition to looking to the terms of the Trust Agreement, other circuits have recognized a distinction between ordinary matters which are considered to constitute administration and extraordinary matters which do not. *See Ader v. Hughes*, 570 F.2d 303 (10th Cir. 1978). The Ninth Circuit has combined the foregoing approaches with an examination as to whether the dispute involves a structural deficiency as opposed to day-to-day fiduciary administration of the fund. *Hawkins v. Bennett*, 704 F.2d 1157 (9th Cir. 1983).

*Hodges,* 707 F.Supp. at 234 -235.

In *Hauskins*, The Fifth Circuit indicated that it aligned with the Ninth Circuit's interpretation and held that the authority and discretion to manage and control the assets of a pension trust fund is vested exclusively in the trustees and not in the employers or the unions.  *Hauskins*, 721 F.2d at 537.  Thus, an increase in benefits is a matter of trust administration.  *Id*.

**<u>Analysis</u>**

A review of the parties' arguments and evidence supports the conclusion that the Employers' proposed changes to the Plan involve the administration of the Fund and therefore are subjects to be submitted to an impartial umpire.

Employers' proposals involved either modifications to the current benefit payment schedules or terms of eligibility. Section 5.3 of the Trust Agreement states, in part as follows:

> Trustees are expressly authorized to negotiate for, obtain and maintain policies of group life, group accident, group health and group disability insurance ... Such policies of insurance shall be in such forms and in such amount and may contain such provisions and be subject to such limitations and conditions as the Trustees, in their sole discretion, may from time to time determine and shall cover such Participants and Beneficiaries as the Trustees, pursuant to the provisions hereof, shall from time to time determine eligible for benefits as herein provided.[6]

Under this provision of the Trust Agreement, the trustees have express and exclusive authority to review and amend the benefits and eligibility requirements of the plan. With respect to the proposed changes concerning COBRA coverage, the Trust Agreement also provides that the trustees have the sole power to decide eligibility conditions, requirements, and limitations.[7]

---

[6] Record document number 1-4, exhibit A, Restated Agreement and Declaration of Trust.

[7] Restated Agreement and Declaration of Trust, § 4.2. Employers also presented evidence demonstrating that the trustees had previously amended provisions of the Plan concerning the
(continued...)

Employees argued that the proposals were not administrative decisions because a unanimous vote was required pursuant to § 5.2(e)3 of the Trust Agreement.

Section 5.2(e) provides as follows:

> The Trustees may, by a unanimous vote, provide for a plan of payment of authorized benefits out of the Trust Fund itself, provided, however, that such payments can be legally made and that the same are in full compliance with all statutory and legal requirements.

Section 5.3 further provides as follows:

> The Trustees are expressly authorized, by unanimous vote, to establish and maintain a plan or plans to provide any and all of the health and welfare benefits, as the Trustees in their sole discretion may determine, directly out of the Trust Fund in accordance and upon compliance with Section 5.2(e) of this Article, in lieu of, or in combination with, coverage provided by an insurance carrier or carriers.

None of the Employers' proposed changes seek to provide benefits, directly or indirectly, out of the Trust Fund. The proposals at issue simply do not involve such use of the fund, but instead affect the coverage, deductibles, premiums and co-pay

---

[7](...continued)
benefit payment schedule, specifically raising co-pays and premiums, and the terms of eligibility. Record document number 9-4, Exhibit ID, Resolution, and Exhibit IE, Amendment Number 1. Employees argued that the Employers have not shown whether these changes were passed by a unanimous vote. Both the Resolution and Amendment Number 1 are signed by three employer and three employee trustees. However, this does not confirm that the vote to approve these changes was unanimous. But even if the vote was unanimous, this does not mean the changes fell within the ambit of § 5.2(e). Rather, the most that can be inferred is that all six trustees agreed to them.

9

amounts.[8]  These are matters of Plan administration.  Employees' remaining argument that the proposals presented "dramatically change the Plan benefits," and thus are non-administrative, is unpersuasive.[9]  The part of § 5.3 quoted first above does not contain a unanimous vote requirement based on the perceived significance of the changes to the "provisions ... limitations and conditions" of the Plan determined by the trustees.[10]

Employers have shown that their proposed changes to the Plan involve administration of the Fund.  Employees have failed to come forward with sufficient evidence to create a genuine dispute on this issue.  Consequently, appointment of an impartial umpire to break the deadlock is proper.

Employees requested that if appointment of an impartial umpire is ordered, David Walker, who was contacted prior to the filing the complaint, be appointed.  The Court finds that the parties should be allowed a final opportunity to jointly select an impartial umpire.  If they fail to do so, they should be allowed to recommend up to three persons, who are willing to serve as the impartial umpire, to be considered by the Court for appointment.  The names

---

[8] Record document number 9-4, Exhibit IA.

[9] Record document number 13, opposition memorandum, p. 8.

[10] Employees have not offered any summary judgment evidence showing how the Plan would be affected by adopting one more of the Employers' proposed changes.  Absent sufficient evidence, the Court cannot simply adopt the Employees' characterization of the proposed changes as dramatic or extraordinary.

and contact information of the recommended persons should be provided to the court no later that ten days from the district judge's ruling on these motions. The Court may select the impartial umpire from the persons submitted by the parties, or may select another person.

### Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment on Behalf of Employer Trustees of the Sheet Metal Workers' International Association, Local Union No. 21, Welfare Trust Fund be granted, and the defendants' Motion for Summary Judgment be denied.

If this recommendation is approved, then it is further recommended that the parties be given ten days from the ruling on these motions to agree on a person to serve as the impartial umpire, or failing to do so, the plaintiff group and the defendant group each be permitted to recommend to the Court up to three persons who are willing to serve as the impartial umpire.

Baton Rouge, Louisiana, September 29, 2009.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE